## Chambers v. Estes.

Opinion delivered May 28, 1923.

1. APPEAL AND ERROR—INSTRUCTIONS—ABSENCE OF OBJECTIONS.—Where no objections are made to the instructions as given by the court, they will be presumed to have correctly declared the law applicable to the facts of the case.

2. BROKERS—RIGHT TO COMMISSION.—Where a broker's commission was payable from the last of a series of notes accepted by the vendor as part of the purchase price, the vendor was liable if he unnecessarily consented to a rescission of the contract and return of the notes, thus defeating the broker's commission.

3. BROKERS—RIGHT TO COMMISSION—EVIDENCE.—In an action to recover a broker's commission from a sale of timber, evidence that the vendor had unnecessarily consented to a rescission of the contract of sale, thereby defeating the broker's commission, held to sustain a finding in favor of the broker.

Appeal from Stone Circuit Court; *Dene H. Coleman,* Judge; affirmed.

*W. M. Thompson,* for appellant.

The sale was rescinded because of insolvency of the purchaser, and appellee, not having procured a purchaser ready, willing and able to pay, was not entitled to commission. The payment of the commission was contingent upon the receipt of the purchase money, which was never collected. 244 S. W. 41. The purchaser was

insolvent, and it could not be collected. Commission not earned where sale not completed. 149 Ark. 118.

*Williamson & Williamson,* for appellee.

The verdict of the jury was in accordance with law, and is supported by the testimony. The cases cited by appellant have no application to facts of this case. Appellant earned his commission when he presented a purchaser whom the vendor accepted and with whom he entered into a valid contract of sale. 89 Ark. 289. Appellee did not warrant financial ability of purchaser. 89 Ark. 294. Appellant could not defeat or avoid payment of appellee's commission by rescinding the contract of sale. 80 Ark. 254. 149 Ark. 118.

HUMPHREYS, J. Appellee instituted suit against appellant in the circuit court of Stone County to recover $1,000 alleged to be due him as a commission for selling the timber on about 700 acres of land owned by appellant. Appellant filed an answer denying the indebtedness, and this formed the only issue in the case. The issue thus joined was submitted to the jury upon testimony introduced by the parties and instructions given by the court, to which no objections were made, which resulted in a verdict and consequent judgment against appellant in said sum. From the judgment an appeal has been duly prosecuted to this court. As no objections were made to the instructions, it will be presumed that the court correctly declared the law applicable to the facts in the case, so the only question which can arise on the appeal is whether, under the law, the judgment is supported by the evidence. The contract between the parties was that appellee should sell the timber for cash, and receive as commission for making the sale the excess purchase price over $10,000. Appellee presented a purchaser, J. P. Ivy, ready, willing, and able to purchase the timber for $11,000, $1,500 in cash and the balance on time, who was accepted by appellant, upon condition that appellee's commission should be paid either with the two last notes, or out of them when collected. Ivy then purchased the timber from appellant,

paying him therefor $1,500 cash and executing nineteen notes to him for $500 each, payable monthly, the first becoming due two months after date, which notes were secured by a vendor's lien retained in the timber deed executed by appellant to said purchaser. There is a conflict in the testimony as to whether appellee should have the last two notes, or the proceeds thereof when collected, as a commission. This conflict is immaterial, the effect of the contract being for appellant to receive $10,000 for his timber before appellee should receive his commission. The notes and timber deed were executed and delivered on August 31, 1920. At that time timber and lumber prices were at the pinnacle. Ivy was regarded as solvent. Appellee did not warrant his financial ability or guarantee the payment of the notes representing the unpaid purchase money. Later there was a sharp decline in the prices of timber and lumber, which demoralized the business. Ivy failed to make the monthly payments, and in March, 1921, claimed that he was unable to carry out the contract. After some investigation of the financial condition of Ivy by appellant and his attorney, they concluded he was insolvent, and, on that account, agreed to a rescission of the contract, without the knowledge or consent of appellee, whereby the timber was deeded back to appellant and the notes returned to Ivy. Testimony was introduced by appellee, tending to show that Ivy was solvent when the contract was rescinded. Clay S. Henderson, who lived at Walnut Ridge, where Ivy resided, testified that in March, 1921, Ivy owned eighty acres of land, his home, a sawmill, and some personal property; that he carried $15,000 or $16,000 life insurance; that he considered him good for $3,000 to $5,000. This was in addition to the timber purchased from appellant, which was then worth $7,000. While appellee had agreed to wait for his commission until appellant had first received $10,000, appellant had no right to make an unnecessary compromise and thereby defeat the recovery of appellee's commission. It was appellant's duty, under his interpretation

of the contract, to collect the unpaid purchase money, if possible, and the testimony tended to show that he might have done so had he not compromised the matter and returned the notes. It is argued that, as the indebtedness was $9,500, Ivy was unable to pay same, even if it be conceded that he was good for $3,000. This argument is not sound, for it leaves out of consideration the value of the timber. If $3,000 were added to the value of the timber, the amount would exceed the indebtedness by $500 or more. The testimony is susceptible of the construction that appellant prevented the payment of the notes by returning them to Ivy, when he might have collected them by legal proceedings. Appellant cannot avail himself of the defense of a nonperformance which he has occasioned. *Pinkerton* v. *Hudson,* 87 Ark. 506; *Vaughan* v. *Odell & Kleiner,* 149 Ark. 118. In this view of the testimony the evidence is sufficient to support the verdict and judgment.

No error appearing, the judgment is affirmed.