*Quinn, Kernan and Quinn, Michael De Ciantis,* for appellees.

---

## ARTHUR E. TARBELL *vs.* SAMUEL BOMES.

### JANUARY 13, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)* *Brokers. Commissions. Cancellation of Contract.*

Where defendant employed plaintiff to sell real estate on a 3% commission, payable "upon delivery of the deed and payment of the consideration", the seller owes the broker the duty to make reasonable efforts to deliver the deed and collect the price, and such efforts if the buyer is solvent may require the bringing of suit. Under the above contract, the seller did not have the right without good reason to cancel or revoke the contract between the buyer and himself.

*(2)* *Brokers. Commissions. Cancellation of Contract. Waiver.*

Where defendant employed plaintiff to sell real estate on a 3% commission, payable "upon delivery of the deed and payment of the consideration" cancellation of the sale contract and giving a release by the seller may indicate a waiver of his right to refuse to pay the broker's commission until the contract of sale has been performed. Whether it has done so is ordinarily a question for the jury, and seller's voluntary release of buyer does not conclusively establish a waiver, but it is a fact to be considered and the test by which to determine the broker's right to commission when conditional on the complete carrying out of the contract, is whether the seller used due diligence and reasonable efforts to secure performance of the contract of sale. If the contract fails by reason of the seller's fault or neglect the broker has earned his commission.

(3) *Brokers.   Commissions.   Cancellation of Contract.*

Where defendant employed plaintiff to sell real estate on a 3% commission,
   payable " upon delivery of the deed and payment of the consideration"
   and buyer declined to carry out agreement of sale and it was not disputed
   that seller could have enforced specific performance or recovered adequate
   damages for the breach, and seller was unwilling to take steps to compel
   buyer to perform, and released buyer from contract, retaining a deposit
   made by buyer, the broker is entitled to his commission.

ASSUMPSIT.   Heard on exception of plaintiff and sus-
tained.

BARROWS, J.   This was an action of assumpsit to recover
plaintiff's commission as a broker.   After a jury's verdict
for defendant, plaintiff brings the case here on exceptions
to the action of the trial court in refusing to direct a verdict
for plaintiff or to grant plaintiff's motion for a new trial.

Plaintiff's present contention is that on the evidence
most favorable to defendant, plaintiff is entitled to a directed
verdict.

Defendant employed plaintiff to sell certain real estate
for 3% commission, payable "upon delivery of the deed
and payment of the consideration".   Plaintiff procured a
customer, one Mrs. Cleveland, with whom defendant entered
into an admittedly binding written contract on October 17,
at which time $300. was paid to defendant.   By the terms
of the written contract $200. remained to be paid, together
with approximately $200. more for incidentals when the
deed was to be passed on October 21 and the buyer was to
execute a mortgage back to the seller.   On the morning of
October 18, Mrs. Cleveland communicated a change of mind
to plaintiff.   This was reported by plaintiff to defendant
accompanied by advice not to "let her off".   On the day
and at the place agreed upon for carrying out the contract
of sale, plaintiff, defendant, the buyer, and lawyers represent-
ing the two latter, met.   Defendant tendered a good deed.
Mrs. Cleveland said, "she could not take it over"; "she
had some money invested in New York and she had lost
it all—and what little money she did have here—she

thought she would have to use it to save some of the other";
"she did not want to go through with it," and asked to be
released. She was willing to lose the $300 already paid.
Plaintiff said, "Make her go through". "Attach her real
estate on Bassett street and her money in the Rhode Island .
Hospital Trust Company." Defendant said he "didn't
want to do that". There is no evidence that either plain-
tiff or defendant then knew the value of the Bassett street
real estate or the amount of money on deposit at the bank.
At the trial, however, it was shown that she had $1000. in
the Rhode Island Hospital Trust Company on October 21.
She had withdrawn $700. on October 17 when she paid the
$300. deposit. The broker protested against defendant's
releasing the buyer and asked what was to be done about
his commission in the event of such release. He insisted
that the buyer was financially responsible and that the
contract could be specifically enforced or the buyer's funds
in the bank attached and damages collected for the breach
of the contract. Defendant said that if plaintiff could get
the buyer to complete the deal "well and good" but that
he, the defendant, felt sorry for Mrs. Cleveland and would
not attach her bank account or take legal steps to enforce
his rights under the contract. He told the broker that no
commission was due unless the deed passed or the money
was paid. Plaintiff then went away. Defendant, as a
result of further pleas for sympathy by the buyer and her
lawyer said, "All right, I will release her". Mutual releases
were executed and defendant, without request from the buy-
er, gave her back $50. of the $300. deposit, the balance being
kept $150. to reimburse defendant for expenditures and $100.
for forfeit money.

A broker and seller may make a special contract whereby
payment of the commission is dependent upon payment of
(1) the purchase money. 9 C. J. 594. In *Cannon v. Staples*,
46 R. I. 300, where the broker's commission was conditional
on "the passing of the deed" we held that vendor's death
before the time for performance, resulting in failure to pass

the deed, did not defeat the broker's right to commission in the absence of evidence of the buyer's unreadiness, unwillingness or inability to carry out the contract of sale. So in the present case the "passing of the deed and payment of the consideration" was not a *sine qua non* to the broker's right to commission. *Myers* v. *Buell,* 142 Ill. App. 467 (commission due "when the trade was completed and all the papers turned over"); *Pinkerton* v. *Hudson,* 87 Ark. 506 (commission due "after land was sold and the purchaser had paid the money"); *Lawrence* v. *Rhodes,* 87 Ill. App. 672 (commission due "when purchaser shall actually take the property and pay the price"); *Neff* v. *Schrader,* 49 N. Dak. 213 (commission due "when the land was fully paid for and a deed given to the purchaser"); *Wilson* v. *Mason,* 158 Ill. 304 (commission due "when the purchaser took and paid for the property"). Where right to commission is dependent on delivery of the deed and payment of the purchase price, the seller owes the broker the duty to make reasonable efforts to deliver the deed and collect the purchase price. Such efforts if the buyer is solvent may require the bringing of suit. *Glade* v. *Ford,* 131 Mo. App. 164.

In the absence of special contract a broker can not be deprived of his commission by any agreement between buyer and seller for cancellation or release of a binding contract of sale. 9 C. J. p. 605, § 91, n. 78. Here was a special brokerage contract but there were no terms in it which gave the right to the seller without good reason to cancel or revoke the written contract between the buyer and seller. (2) Cancellation of the sale contract and giving a release by the seller may indicate a waiver of his right to refuse to pay the broker's commission until the contract of sale has been performed. Whether it has done so is ordinarily a question for the jury. Defendant's voluntary release of the buyer did not conclusively establish a waiver. The voluntary nature of the release is only one fact to be considered. The test by which to determine the broker's right to commission when conditional on the complete carrying

out of the contract is whether the seller used due diligence and reasonable efforts to secure performance of the contract of sale. *Glade* v. *Ford, supra.* If the contract falls through by reason of the seller's fault or neglect, the broker has earned his commission. *Wright* v. *Young*, 176 Mass. 100.

If the cancellation of the present contract had been sought by defendant he admitted that plaintiff would have been entitled to commission. The contention was that defendant did all that reasonably could be asked of him to (3) compel the buyer to complete the transaction and that the seller was not bound to start legal proceedings. It is not disputed that defendant could have enforced specific performance of the contract of sale or recovered adequate damages for breach of the contract. It is not even certain that legal proceedings would have been necessary. Vigorous insistence on performance might have sufficed. It is suggestive that the withdrawal of $700. on October 17 was of the exact amount required to carry out the buyer's contract on October 21. The buyer, though present at the trial, was not called as a witness. There is no evidence of the extent of Mrs. Cleveland's asserted "hard luck" in stock dealings or when it occurred. The buyer's release was asked because she preferred to otherwise use money ready at hand and available to carry out her contract with defendant. When she told defendant that she "could not take" the real estate, it is plain that her meaning was that she did not wish to do so and that defendant so understood it. Defendant was unwilling to try to compel Mrs. Cleveland to carry out her contract or pay damages for failure to do so. While there was the fictitious claim of the buyer's counsel that defendant could not collect and the seller's ignorance of the extent of the buyer's resources, defendant and his lawyer knew that the contract could be specifically enforced. They also were told how damages could be collected by legal proceedings and where the attachable property was. They showed no interest in this. They erroneously construed the brokerage contract as giving the broker no rights unless

the sale contract was actually carried out and that the seller had the absolute and unqualified right to defeat the broker's commission by cancellation of the contract. Defendant admittedly profited to the extent of $100. after the unsolicited return of $50. to the buyer. The evidence discloses clearly that defendant's conduct sprang from unwillingness to engage in litigation to enforce his rights not from fear of inability to enforce them. Release of a seller's rights to a legally bound buyer is not permissible at the expense of the broker who has brought the parties together and done all that he could to help the seller secure performance. It is no part of the broker's duty to collect the purchase price in the absence of express agreement so to do. *Pinkerton* v. *Hudson, supra.* While it has been held that *mere failure to sue* in the absence of a showing of solvency so that payment could be collected is not lack of diligence, *Glade* v. *Ford, supra,* in the present case there is and can be no claim that the buyer could not perform or pay damages. There is more than mere failure to sue. This seller not only failed to act but acted affirmatively to the detriment of the broker. We have found no case where after a valid contract of sale a seller has released the buyer on account of sympathy, generosity or unwillingness to enter upon litigation which could be prosecuted to a successful conclusion and by such release has prevented the broker from recovering a commission. Adopting the most liberal attitude possible toward the seller we fail to see how a jury could find on any reasonable view of the facts in this case that defendant did use reasonable efforts to secure performance of the contract. A verdict for plaintiff ought to have been directed. With interest, plaintiff is now entitled to judgment for $212.75.

The plaintiff's exception to the refusal to direct a verdict in his favor is sustained and the defendant may appear before this court on January 21, 1927, at 10 o'clock a. m. and show cause why an order should not be made remitting

the case to the Superior Court with direction to enter judgment for the plaintiff in the sum of $212.75.

*Morgan and Morgan,* for plaintiff.

*Maurice Robinson, Charles M. Robinson,* for defendant.